The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and its Honorable Court. Thank you, and good morning everyone. The first argued case this morning is number 19-2147, the Boeing Company v. Secretary of the Air Force. Mr. McCaleb, please proceed. Thank you, Your Honors. May it please the Court. The Court should reverse the ASBCA's decision and remand with instructions to enter judgment for Boeing because the Board's interpretation of 7013F suffers from three prejudicial errors. First, it defies the plain language of 7013F by failing to read it as a whole and instead jettisons the first of two complementary sentences and focuses instead on nine words in the second sentence in violation of interpretive canons to read adjacent sentences together, not in isolation. Mr. McCaleb, this is Judge Lorry. Those nine words are awfully important. They say only the following legends are authorized under this contract. That's pretty clear language, isn't it? If you were reading the second sentence in isolation, as the Board did, perhaps, but that's not what the law requires. What the law requires is a construction that takes account of the whole of the regulation, and when you look at the two sentences, those two sentences, the first sentence provides that the only way for a contractor to assert restrictions on government's rights in technical data is by marking the data subject to restriction. That second sentence that you draw from, Judge Lorry, identifies the only four legends that are authorized to affect those restrictions on the government's rights. If you read those two sentences in harmony, as the law requires, the two sentences focus only on markings or legends that restrict the government's rights in technical data. They simply do not speak to restrictions on third-party usage of technical data that contractors like Boeing own. This construction, Judge Lorry, reflects a plain reading of the entirety of 7013F, interpreting it both as a whole and in the context of its surrounding sections, as this court's aqua products case demands. What the government principally argues is that because the first sentence of F uses the word marking, but the second uses the word legends, two different words, then the two sentences are unrelated and cannot be read together. So 7013F is not limited to restrictions on the government. It extends to third-party markings as well. In other words, you would impliedly read into that second sentence the following saying, when a contractor asserts restrictions on the government's rights, as discussed in the first paragraph. That's the way you believe it reads. I believe that reading those two sentences in tandem, as the law requires, that is the only reasonable interpretation of the entirety. And that interpretation, Judge Lorry, is confirmed if you look at the immediately preceding and the immediately succeeding sections, as well as the default policy statement on Section 7013F. So 7013F shows that marking, as used in F, is a verb. One of the big arguments is that these are two different words, and if the regulation writers had intended them to be linked together, they would have used the same words. But what 7013F shows is that marking, as used in the first sentence, is a verb, describing the act required to assert restrictions on the government's rights. Legends, as used in the second sentence, is a noun referring to language a contractor applies when, quote, marking its technical data as required by the first sentence. What F1, the immediately succeeding subparagraph, shows is that those two sentences of F, the two sentences comprising F, are to be read in tandem because F1 uses the verb mark and the noun legend in the exact same sentence. It says, and I quote, the contractor shall conspicuously and legibly mark the appropriate legend on all technical data that qualify for such markings. And given, of course, that F1 is a subparagraph to F under 7013, the referenced legends are those in 7013F. Those are legends that restrict the government's rights. Likewise, to be very sure, the DFARS policy statement on section 7013 confirms that markings, when used as a noun, is synonymous with the term legends, and both relate solely to restrictions on the government's rights. And you see that in 227.7103-10B, which states that paragraph 7013 requires a contractor that desires to restrict the government's rights in technical data to place restrictive markings, using the term markings interchangeably. Mr. McHale, can you hear me? Yes, Sean. You're quoting from a particular regulation, and I'm sorry. You said it a little too quickly for me. Could you say it again? Which one am I supposed to be reading? Yes, I apologize. Yes, Judge Jen. It's DFARS 227.7103-10, and we're looking at subsection B. B. And there are two points to be made here. The first is that overall, this entire section, 7013, all of this is directed solely towards restrictions on the government's rights. The second point is that the term markings and the term legends, when used as nouns, are used interchangeably as demonstrated by their use here. So what this paragraph says is that the 7013 clause, quote, requires a contractor that desires to restrict the government's rights. So, again, we're dealing just with restrictions on the government's rights. This has nothing to do with restrictions on third-party rights. And it says that 7013, that a contractor that desires to restrict the government's rights has to place restrictive markings, using the term markings synonymously with legends, on the data, and it provides instructions for placement of the restrictive markings, again, using the term markings interchangeably with legends, and authorizes the use of certain restrictive markings. These provisions, these three provisions. This is 7103-10B1, right? Correct, Judge Jen. Okay, got it. That and 7013-E and 7013-F1, I think those three additional paragraphs, the surrounding and prescribing provisions, make very clear that Boeing's construction is the only reasonable interpretation, because I think these provisions confirm beyond any question that Boeing's interpretation that 7013-F regulates only restrictions on the government's rights in technical data and identifies the only permissible legends or markings to affect those restrictions. It in no way prohibits markings or legends restricting third-party rights in technical data that a contractor owns. And, indeed, if we step back for a minute, the entire purpose of the DFARS is to regulate the rights and obligations of DOD and its contractors, not contractors and third parties. The board's error, the board's interpretation, violates binding canons of construction by failing to read adjacent sentences together. What the board did is the board made a false choice between the two sentences of 7013-F instead of harmonizing them, and you see that at appendix page 12. And that approach was wrong. Mr. McHale, I guess another source or another tool that the board relied on was pointing to 7103-12 for nonconforming markings. Yes. The passage in that regulation makes clear that the authorized markings permitted are identified in 7013 and that all other markings are nonconforming markings, and an authorized marking that is not in the form or differs in substance from the marking requirements in clause 7013 is also a nonconforming marking. So can you help me understand what's going on here? Because it appears to suggest on its face that the only authorized markings that are going to be permitted for these types of technical data and these noncommercial items are the markings that are identified in 7013. Yes, Judge Chen, but they are only markings that are restricting the government's right. And the board misconstrued respectfully those two paragraphs. There was 7103-12, and then the board also relied on subparagraph H2 in the 7013 clause itself. And the nonconforming markings, those are markings that are not in the format authorized by the contract. The context of both of these provisions is plain. These clauses are addressed solely to markings that restrict only the government's rights in technical data. They do not speak to restrictions on third-party rights independent of the government. And if you look just two subsections, for example, above 7013-H in that same clause, you get to 7013-F, which shows, as we just went through, shows plainly that 7013 is addressed only to markings that restrict the government's rights in technical data. It's not concerned with third-party markings. And 7103-12, likewise, as you say, it begins by identifying that authorized markings are identified in 7013. That takes you to the clause. That takes you to the very clause we're talking about. And 7013 addresses only markings that restrict the government's rights in technical data. So 7103-12 does not address markings beyond 7013-F, which is directed solely to limits on the government's rights. And if it's okay, I'll reserve my rebuttal time. David, is there any more questions from the panel? Yes, Jim, and I'm sorry. I do have a couple more questions. No, please proceed. We'll save the rebuttal time. Okay, thank you. Thank you, Judge Newman. I'd like to know, the regulations we're looking at right now have been around for 25 years. And as far as I know, there hasn't been any case law addressing the regulations before us. And it just seems hard to believe that this issue hasn't come up in the past quarter of a century. Can you tell me what has been Boeing's practice or other contractors' practice in dealing with markings? I can, Judge Chen. I can, Judge Chen. And this is kind of part and parcel of, you know, the board had said that there were, you know, warning signs that the government should have paid attention to and should have negotiated, you know, especially negotiated rights license. The bottom line is there were no warning signs because the contracting officer, in conjunction with Air Force counsel on the F-15's prior contract, said that Boeing's markings were permissible. And Boeing had relied on that position since 2002, going all the way back to 2002 on the F-15 contract. It wasn't until 2017, in connection with the proceedings that bring us before the circuit today, that the Air Force rejected that position because it was, quote, from another contracting officer on a previous contract. And they said because it does not also alter or modify the F-15 contracted issue here. Before that time, before the change in position in 2017, all, quote, signs were that Boeing could affix its legend to technical data that Boeing owned. And, indeed, it had since 2002. And you can see that, for example, in appendix pages 220 and 221. But that, Judge Chen, your question's a good one. And the fact of the matter is this hasn't come up because the government has not taken a position this strained that we are aware of. And I think that that's made plainly clear by amici as well, the Chamber of Commerce and the Professional Services Council. This is an issue that's of vital importance to contractors who are contracting with the Department of Defense so that they can protect their ownership rights via the three third parties. All right, thanks. And if I understand your position that the board misread these regulations, wouldn't the correct result be to remand this for then the board to consider the possibility that your markings are unjustified markings and look at that through the 7037 procedure? No. For two reasons, Judge Chen. Number one, we're talking about regulatory interpretation and contract interpretation, which are both matters of law that this court is plainly enabled and qualified to address. And, two, this doesn't deal with unjustified markings. Unjustified markings are markings where the contractor is identifying one of the permissible legends or using one of the permissible legends, but it's not justified. So, for example, a contractor puts a legend that says that it's limited rights. And that means that the items that are subject to those restrictions were prepared and created solely exclusively with private funding. My understanding the government's position is in these contracts with Boeing, they contracted for unlimited rights. And one of their arguments is these markings that you are proposing and you're trying to use, in fact, constrain their unlimited rights in terms of how they interact with third parties. And so, in a sense, there is a violation, allegedly, to the unlimited rights that they contracted for. Well, I think that gets to two things. One, just to quickly finish the thought on unjustified markings. So that would be if a contractor marked the data with limited rights, for example, which means that the item was developed with private expense. But, in fact, it wasn't. It was developed with government expense, and, therefore, it's an unjustified marking. The issue that you just raised, Judge Chen, really goes to the issue that the board rejected. This is the issue where the board basically rejected the government's position and said that Boeing's legend clearly states that the government has unlimited rights and that the government can grant authority to others. So it's not clear what sort of, quote, downstream confusion this might cause. This is an area where the court's without authority to affirm a board decision on a basis not addressed by the board because a board decision has to be upheld, if at all, on the basis articulated by the board. And that's clear from the circuit's agility decision in 2017. So query whether the court even should be entertaining that argument. But the board got it right on that issue. Anything else from Mr. McCaleb at this point? No, thanks. Okay, all right. We'll save you rebuttal time. Let's hear from the government. Ms. Miosi. Good morning. May it please the court. The court should affirm the board's ruling that the contract between Boeing and the Air Force does not authorize Boeing to unilaterally apply its own data rights legend to the technical data that Boeing delivered to the Air Force with an unlimited rights license. The 7013F contract clause and the DFARS together provide that only four legends are authorized and deem all other data rights legends to be nonconforming. And so the board correctly concluded that Boeing's legend is not contractually authorized. And this is supported by the plain language of the 7013F contract clause. The corresponding DFARS regulation in 227.7103-12A, the overall regulatory. This is Judge Chen. Yes. When I look at 7013F and I try to look at it through the government's understanding, I ask myself what work, what independent work is the first sentence doing? That is to say, if we were to remove that first sentence from 7013F, under your interpretation, wouldn't the scope of 7103F be precisely the same? Your Honor, the 7013F, the first sentence in 7013F, relates to a point of debate leading up to the 1995 regulations. And we see this in 60 Fed Reg 33465, which was in the addendum at tab H. And there was a disagreement about how contractors should be able to assert restrictions on the government's rights. Some contractors didn't want to have to mark the data. They wanted to mark using only a simple marking, and some people were objecting. And the government's response, DOD disagreed and said, you need to mark the data if you want to assert a restriction on the government's rights. That it wasn't a burden on contractors to do that. Counsel, this is Judge Lori. You just emphasized what the first sentence says. It relates to restrictions on the government's rights, not third party. Yes, Your Honor. And the second sentence is unqualified. It is not limited by any, it is unqualified and states that only the following legends are authorized under this contract. And then it lists the four legends, the government purpose rights, the limited rights legend, especially a negotiated rights legend. So the two sentences are serving different purposes. But it isn't even in a separate paragraph. It's part of the same paragraph. It is part of the same paragraph, Your Honor, and it corresponds to the DFARS provision, which states, as the board found with slightly more clarity, that all other markings are non-conforming markings. So, excuse me. I'm sorry. I don't think I got an actual answer to my question. And let me repeat it again. I'm just trying to understand what independent work under your interpretation is the first sentence of 7013F doing. Because as I understand your interpretation, I can remove 7013F, the first sentence that is, and it doesn't alter the scope of that paragraph at all. Am I right or am I wrong? I just want to make sure I understand your interpretation. Yes, I'm sorry, Your Honor. The first sentence serves the purpose of directing contractors as to how they can assert restrictions. Isn't that what the second sentence is doing, though? I mean, that's what it says. It says, only the following legends are authorized under this contract.  Hey, Mark, you want to put a legend down? You've got to choose one of these four right here. And there isn't any. I mean, so I guess the first sentence is like a throat-clearing exercise. I'm trying to understand. It's saying that it identifies a purpose. Okay, but in the end, it's not actually doing any work then. The first sentence is not affecting which legends a contractor may apply. So in that sense, Your Honor, if the first sentence didn't appear in 7013F, it would not affect which legends a contractor may apply. But what the 7013F first sentence indicates is that if a contractor is going to restrict the government's rights, it must do so by marking. It can't send a letter in. It can't drop a footnote in its proposal. I completely understand that. If a contractor wants to place restrictions on the government's rights to the data, the contractor is absolutely required to mark that data. But then the second sentence says, and here are the only things that you can use to mark the data to restrict the government's rights. I mean, why doesn't that neatly read together and be the correct reading in the end? Your Honor, the language in the second sentence is not limited to, so it does not say only the following legends restricting the government's rights are authorized under this contract. It is unqualified. It lists only four legends and doesn't indicate that there are legends for restricting the government's rights, and that's consistent with the corresponding DFARS provision 227.7103-12, which states in paragraph A-1 that the authorized markings are identified in the 7013 contract clause, and all other markings are not conforming. So that regulation confirms the government's reading of the 7013-F contract clause, and that reading is consistent with the regulatory and contractual scheme as a whole. I asked Mr. McCaleb this question. Maybe you also could give me an answer. What happens in other contracts with other contractors dealing with technical data as the noncommercial items? Is this the first time that you're aware of, that the government's aware of, that a contractor has sought to mark data that restricts not the government's rights but third parties' rights or mark to serve as a warning to unauthorized third parties? Is that something that's never happened before? Your Honor, the record does not contain any evidence or indication that this has been an issue since 1995, the last 25 years. Mr. McCaleb did cite to Boeing's letter in the record at APPX, appendix pages 220 to 221, where Boeing told the Air Force that it had configuration control issues and that these legends were necessary and had been approved in the past. That's the only evidence in the record as to what any other contractor has attempted to do or assert under the 7013-F contract clause, and the board did recognize that there is literature out there advising or taking the view that's fully consistent with the government's view, which is that the 7013-F contract clause in plain and direct and unqualified language identifies the only permissible legends to mark the data. When interpreting these regulations, is our review de novo? It is, Your Honor. It would be de novo review. It's a legal question of the interpretation of the regulation, and these are contract clauses as well, which would also be a legal question that the court reviews de novo. Okay. I just wanted to make sure that the government doesn't have a position that it somehow deserves deference in how to understand these regulations. Your Honor, we think the regulation and the contract clause are unambiguous and consistent with the scheme as a whole. If DOD contemplated the need for a legend to protect any of the retained rights when there's an unlimited rights license, there would be provisions for that. The way the DOD approached the government purpose rights license and the limited rights license, there are highly specific terms on which third parties can obtain access to the government purpose rights and limited rights license. They have to sign, for example, a nondisclosure agreement, and that's set out in the DFARS 227.7103-7C. That nondisclosure agreement, contrary to the argument in Boeing's reply brief, that the nondisclosure agreements and the 7025 contract clauses are all for the benefit of the government to make sure that the government's restrictive license is adhered to. In contrast, the NDA actually says, the nondisclosure agreement actually says, that it is for the benefit of the contractor. That is Boeing. And so under the scheme as a whole, what you see is a real absence of any contemplation that there would be a marking when there's unlimited rights license granted to the government. You have this express language in the 7013F contract clause that says these are the only authorized legends. Then you have similar language in the DFARS, and then you look at the clauses dealing with government purpose rights and limited rights licenses where it's highly specific and particularized language. And the absence of any similar language dealing with the unlimited rights license just confirms what the contract clause and the DFARS itself say. These are the only authorized markings that are permitted under the contract. And the board incorrectly concluded that because one of Boeing's legends would allow the government to authorize others to use the unlimited rights data, that that was not an impairment or restriction on the government's rights. The government's rights are much broader than that. The government is entitled to have others use the data without any kind of authorization. So what this means is that the government can have another contractor use the data and then have that contractor distribute the data to a subcontractor. And that's not in dispute, is it? It's not in dispute as to what the government can authorize to be done with the information. Is that correct? That is correct, Your Honor. However, Boeing actually proposed two different legends, one that required written approval from the government or Boeing for third parties to use the data. And that would be inconsistent with the unlimited rights license. There's no reference in the license to how the government must authorize third-party use. So how is that inhibited by the proposed marking? The proposed marking, one of the proposed markings was to require written approval, which is not required under the unlimited rights license. The Air Force can have others use it without any kind of particular authorization. And the purpose of that is so that the government's rights are so broad, the government does not want to have to be required to provide some kind of authorization when it asks third parties to use the data. So how do you propose that the contractor's ownership rights, as far as third parties are concerned, would be protected? The contractor's ownership rights would be protected through, well, first of all, Your Honor, it would depend on what use has been made of the data, what release that the government has made under its unlimited rights license. We're talking about unauthorized where there is no compliance with the other provisions, which as I understand it are unchallenged, that the government can authorize use and the contractor can authorize use. We're talking now about unauthorized use and notification to third parties with no connection to this contract that there are restrictions on this use. How does the government propose to protect the contractor's, I think, unchallenged right to, without permitting even notice that there are restrictions on the data? Your Honor, Boeing would have the right to, I assume or presume, to assert a state law claim if it believes that someone has obtained the data through unauthorized means, meaning that the Air Force hasn't, for example, if the Air Force were to decide that the data could be released publicly, that would not violate Boeing's ownership rights. The fact that it could be used by others once it has been published and Boeing's reply brief acknowledges that the government can't How does the public know that there are any restrictions on this use? Isn't there a clear implication that this is free for everybody if you don't permit any sort of indication or marking that perhaps this is a proprietary right? The proprietary right, Your Honor, would depend on the way someone obtains, whatever proprietary rights Boeing retains would depend on the way in which that other person obtains the data. For example, if it's been disclosed. But you're not permitting them to let the public know that. Yes, under the contract, Your Honor, there are only four authorized non-conforming, I'm sorry, there are only four authorized markings. And so this is just a matter of the nature of the unlimited rights license and the terms of the contract to which Boeing signed up and when it entered into the contract with the government. Any more questions for Ms. Biosis? No. Okay, thank you. Mr. McCaleb, you have your rebuttal time. Thank you, Judge Newman. And just three or four quick points. Judge Chen, you asked government counsel about whether there's any deference owed to the government's interpretation here. And the government correctly has not argued at any point during this litigation that there is any deference owed. And indeed, there's not. There's no deference owed by the interpretation of a single Air Force contracting officer of a Department of Defense regulation. And that's plain. Second, on the nondisclosure issue that government counsel raised, what the government has been saying is that under Boeing's view, each contractor can decide the form of any third-party authorization or the terms of that authorization. And that's simply not Boeing's position. Boeing's markings restrict third-party rights when third parties lack authorization from the government or Boeing. But Boeing does not demand that the government exercise those rights in any particular way, nor does it require that third parties sign any NDA of Boeing's choosing. Third, the government counsel cited to the regulatory history. And the regulatory history here is clear. The 95 regs were intended to expand contractors' technical data rights. And the nine words the government focuses on were added in 7013 as part of that expansion. And the government has cited nothing in the regulatory history to suggest that those words were added to bar contractor markings restricting third-party rights. Given the intent to expand contractor rights, that silence we submit is fatal to their position that these words impose such a prohibition. Finally, your honors, at the end of the day, what the government is really arguing is that a grant of an unlimited rights license is the same as placing technical data in the public domain, permitting third parties to use those data without authorization from anyone. That interpretation conflicts facially with 7013, which grants contractors ownership of their technical data even after granting unlimited rights license to the government. But, Mr. McCaleb, how could Boeing claim to have a trade secret in the technical data when the government has unlimited rights to it and isn't required in any way to maintain any type of confidentiality of the data? It can do whatever it wants whenever it wants. It could leave it on a park bench. It could publish it in the Federal Register. It could do whatever it wants with it. Well, it's a fair enough question. First, we don't think that this court needs to even decide that issue, especially if you agree on our interpretation, whether animated or not by the regulatory history. But in analyzing that issue, the board, we think, mistakenly focused on whether Boeing enjoys trade secret rights. Boeing believes it does based on the cases that we have cited that basically say that even if there is a disclosure to a third party without confidentiality, as long as that is not the sort of disclosure that would generally render the data to be released in the public domain, that at least in some states that data may continue to enjoy trade secret protection. But the question was never whether an individual piece of technical data enjoys trade secret protection. That's, as you suggest, a complex question of state law that was not briefed before the board. The question was whether Boeing can mark its electronic warfare technical data to notify third parties that it owns those data. And on that question, it is enough that Boeing has residual proprietary rights in those data as, quote, all rights not granted to the government are retained by the contractor under both 7103-4 and 7013. That satisfies 2320, 10 U.S.C. 2320's requirement that technical data regs can impair any right of a contractor with respect to patents, copyrights, or any other right in technical data otherwise established by law. Those rights, those ownership rights, are established by law. The law that establishes them is 7103-4 and 7013C. For these reasons, and if the panel doesn't have any other questions, we respectfully request that the court reverse the board's decision. Any more questions for Mr. McHale? No questions. Okay. Thanks to both counsel. The case is taken under submission.